Marc J. Randazza, NV Bar # 12265
LaTeigra C. Cahill, NV Bar # 14352
RANDAZZA LEGAL GROUP, PLLC
4035 S. El Capitan Way
Las Vegas, NV 89147
Telephone: 702-420-2001
Facsimile: 305-437-7662
ecf@randazza.com

*Attorneys for Plaintiffs*
*Dennis Hof and Cherry Patch LLC*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| DENNIS HOF, an individual; CHERRY PATCH LLC, a Nevada Limited Liability Company. | Case No. _____ |
| Plaintiffs, | ***EMERGENCY EX PARTE* MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |
| vs. | |
| NYE COUNTY; NYE COUNTY BOARD OF COUNTY COMMISSIONERS; DAN SCHINHOFEN (in his personal and official capacity as an employee of Nye County); NYE COUNTY SHERIFF's OFFICE; SHARON WEHRLY (in her official capacity as an employee of Nye County); JANE DOE; and JOHN ROE. | |
| Defendants. | |

Plaintiffs Dennis Hof and Cherry Patch LLC ("Plaintiffs") brings this motion on an *ex parte* emergency basis for a temporary restraining order to enjoin Defendants from enforcing the unlawful threats to initiate a show cause hearing against Plaintiffs due to Plaintiffs' display of a non-obscene sign (known throughout as the "Lovers at Play Sign" or the "Sign") and to engage in activities protected under the First Amendment.   This motion is made based on all

pleadings and papers on file herein and the attached Memorandum of Points and Authorities, and any further argument and evidence as may be presented at hearing.

## MEMORANDUM OF POINTS AND AUTHORITIES

### 1.0    INTRODUCTION

Plaintiff Dennis Hof is the owner of several brothels in Nevada, including (relevantly) the Love Ranch South, a brothel licensed by the Nye County Board of County Commissioners. Plaintiff Hof is a Manager of Cherry Patch LLC, a Nevada limited liability company. Plaintiff Cherry Patch LLC operates Love Ranch South, which is located at 300 Appoloosa Lane in Crystal, Nevada. Plaintiffs move to enjoin Defendants from enforcing an unlawful order to censor a non-obscene Sign barring them on threat of holding a show-cause hearing which could lead to Plaintiffs losing their brothel license, and thus barring them from public participation and First Amendment protected activities.

Defendants issued and enforced this threat as a direct response to Plaintiffs act of engaging in peaceful constitutionally protected speech.  Plaintiffs posted the Sign at issue many years ago as an expression of free speech.  Defendants' conduct is an unconstitutional prior restraint on activity that is at the core of the First Amendment, and violates the First and Fourteenth Amendments to the U.S. Constitution, as well as Article 1, Sections 8 & 9 of the Nevada Constitution.

Defendants' conduct is never constitutionally tolerable.  But the harm caused by their actions is especially pronounced here, because Defendants wished to censor Plaintiffs' speech because they do not like the content.  To chill Plaintiffs' free speech activities based on the content of the speech is to place the heavy boot of censorship firmly upon the throat of the noble values underlying the First Amendment.

This will not stand, and the Court should immediately remedy the unconstitutional wrong on an emergency basis by ordering that the threat to issue a show-cause based on Plaintiffs' non-obscene Sign should be lifted, and allow Plaintiffs to remove the yellow censorship bracket Plaintiffs have used to censor the Sign at the direction of Defendants, and that Plaintiffs be permitted to display the Sign uncensored.

## 2.0   Facts

Plaintiff Dennis Hof is a Manager of Cherry Patch LLC, which operates the Love Ranch South ("Love Ranch South") in Nye County, Nevada. *See* Declaration of Dennis Hof ("Hof Declaration"), attached hereto, at ¶ 3. Love Ranch South is licensed by the Nye County Board of County Commissioners. *Id.* at ¶ 7. Mr. Hof has owned the Love Ranch South since 2010. *Id.* at ¶ 8. Mr. Hof purchased two brothels in Nye County in 2010, which included a brothel formerly known as the Cherry Patch. *Id.* at ¶ 9. Mr. Hof transformed the brothel into the Love Ranch South, which is the second location of his Love Ranch brand brothels, as the original Love Ranch is located near Carson City, Nevada. *Id.* at ¶ 10.

Mr. Hof prides himself in being a law-abiding citizen, and has always actively worked with law enforcement and government officials to ensure that his brothels are operated in accordance with the law. *Id*. at ¶ 11. Mr. Hof owns several legal brothels in Nevada, has actively lobbied for legislation over the years as a member of the Nevada Brothel Owners' Association, and is currently running for political office for the rural District 36 seat in the Nevada State Assembly covering Nye County, Lincoln County, and part of Clark County. *Id.* at ¶¶ 12-13. Mr. Hof is a civically concerned individual, who over the years, has not shied away from expressing his political opinions and presenting himself as a candidate for public office. *Id.* at ¶ 14.

Mr. Hof has installed several humorous signs near a path leading to the Love Ranch South.[1]  *Id.* at ¶ 15.  All the humorous signs have been located near the brothel for over five years.  *Id.* at ¶ 16.  The signs are not advertisements, as defined by NV Rev Stat § 201.430 (2013), because they do not identify the brothel or advertise prostitution in any way.  *Id.* at ¶ 17.  On information and belief, no citizen has ever complained about the signs.  One such sign had the words "Lovers at Play" and depicted a non-obscene stick figure couple wrapped around each other.  *Id.* at ¶ 19.  A picture of the Sign is below as <u>Figure 1</u>.

### Figure 1



The Love Ranch South is known for having many humorous signs, located near the brothel, such as a yellow sign that says "Booze and Booty" with an arrow pointing ahead (see <u>Exhibit 1</u>) and the Lovers at Play Sign, that is the subject of this Complaint and this Emergency Motion.[3]  *See* Hof Declaration at ¶ 21.

---

[1]    Mr. Hof is known for having humorous yellow signs outside of his brothels, such as the yellow sign outside of his Northern Nevada Brothel (which is not in Nye County), the Moonlite Bunny Ranch, which depicts two coital bunnies, as seen in <u>Exhibit 2</u>.

[3]    While beyond the scope of Plaintiffs' Complaint and Motion, Plaintiffs recently removed the Booze and Booty Sign, not voluntarily, but out of fear of retaliation based on Defendants threats about the Lovers at Play Sign, which shows that Defendants have effectively chilled Plaintiffs' speech.  *Id*. at ¶¶ 22-23.

There is an ancient tradition of providing unofficial and official signs and signals that a potential customer is traveling in the correct direction when seeking out a brothel.  For example, while most speech from Ancient Pompeii is lost to the ages, the excavated streets and walls still show graffiti, in the form of penis carvings, with the bell end pointing in the direction of the brothel.  Plaintiffs, as heirs to this time-honored tradition have sought to continue it, in a more creative and humorous manner.

Instead of hacking penises into the rocks and public roads, Plaintiffs have taken the more modern approach of installing several signs near a path leading to the Love Ranch South so that potential visitors know they are heading in the right direction and to ensure that potential visitors do not get lost in residential neighborhoods looking for the Love Ranch South.

The motivation behind the signs is to guide people, and the signs do not identify the brothel nor advertise the brothel.  *Id*. at ¶ 24.  The Sign at issue in this case, as shown above in Figure 1, does not advertise the brothel, nor does it identify the brothel by name.  *Id*. at ¶ 25.  No residents have complained about the signs to Plaintiffs.  *Id*. at ¶ 26.  Nye County Officials have inspected Love Ranch South quarterly for many years, and no Official has ever mentioned that the signs violate local or state laws in any way.  *Id*. at ¶ 27.  This demonstrates that the signs violate no law, and even if they do, the government should be estopped from claiming that they do today.

Based on information and belief, Dan Schinhofen of the Nye County Board of Commissioners directed Sheriff Wehrly Nye County Officials to instruct Plaintiffs to censor the non-obscene Sign under threat of scheduling a show-cause hearing against them, in violation of Plaintiffs' Constitutional rights, including Plaintiffs' First Amendment rights to freedom of speech and expression.  *Id*. at ¶ 28. Plaintiffs, fearful that Mr. Schinhofen would retaliate against them, censored

the Sign at Defendants' direction, as shown below in Figure 2. *See also* Hof Declaration at ¶ 29.

### Figure 2



However, this censorship is not voluntary – it is done out of fear of prosecution or other governmental retaliation for the speech.  This fear is not merely theoretical, but is the natural result of law enforcement threats, delivered to plaintiffs at the behest of the Nye County Official.

After a recent quarterly inspection by Nye County Officials, Mr. Hof received a phone call from Sheriff Sharon Wehrly, a County official, telling him that Defendant Dan Schinhofen planned to schedule a show-cause hearing against Plaintiffs specifically because of the Lovers at Play Sign. *Id.* at ¶ 28. Sheriff Sharon Wehrly told Mr. Hof that the issue Mr. Schinhofen has with the Sign was the picture of the stick figures.  *Id.* at ¶ 33.  Sheriff Wehrly told Mr. Hof that the stick figures had to be censored immediately, or Mr. Schinhofen would schedule a show-cause hearing against Plaintiffs. *Id.* at ¶ 28.

Afraid of retaliation, Plaintiffs immediately censored the Sign and blocked the stick-figures from view, as shown in <u>Figure 2</u>. *See also* Hof Declaration at ¶ 29. Upon information and belief, the Lovers at Play Sign, uncensored, did not violate any local or state laws. *Id.* at ¶ 34. However, they have no desire to have their First Amendment rights trampled upon, and engaged in this self-censorship involuntarily after being threatened by the government. *Id.* at ¶ 31.

Upon information and belief, Mr. Schinhofen directed that the Sign be censored because he did not like the content of the Sign and exercised unfettered discretion in seeking to censor the Sign's content. *Id.* at ¶ 33. Upon information and belief, the display of the non-obscene Sign did not violate any ordinance. *Id.* at ¶ 34. The Sign is located near the Love Ranch South. *Id.* at ¶ 15.

Mr. Schinhofen is a County Official who has authority over whether Plaintiffs may keep his brothel license on a quarterly basis, and Plaintiffs' fear of retaliation is legitimate. *Id.* at ¶ 29. Plaintiffs' Lovers at Play Sign is not obscene and it is not an advertisement for a brothel. *Id.* at ¶ 35. At no time did Mr. Schinhofen provide Plaintiffs a procedure to appeal his sudden and arbitrary decision that the Sign must be censored. Id. at ¶ 35.

The Lovers at Play Sign is a form of free speech and expression, and First Amendment will not abide such a loss of First Amendment rights.

## 3.0    STANDARDS FOR OBTAINING INJUNCTIVE RELIEF

To obtain a temporary restraining order, a party must demonstrate either (1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) the existence of serious questions going to the merits and that the balance of hardships tips sharply in its favor. *FDIC v. Garner*, 125 F.3d 1272, 1277 (9th Cir. 1997); *Metro Pub. Ltd. v. San Jose Mercury News*, 987 F.2d 637, 639 (9th Cir. 1993). "The injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" *City of Los Angeles v. Lyons*,

461 U.S. 95, 102 (1983).  Under these standards injunctive relief is appropriate when either of these two tests are met.  These are not two separate tests, but "merely extremes of a single continuum."  *Topanga Press, Inc. v. City of Los Angles*, 989 F.2d 1524, 1528 (9th Cir. 1993).  When a violation of a constitutional right has been proven, however, no further showing of irreparable injury is required.  See *Associate General Contractors of California v. Coalition for Economic Equity*, 950 F.2d 1401, 1410 (9th Cir. 1991).

## 4.0    ARGUMENT

### 4.1    Plaintiffs Have Standing

"To qualify as a party with standing to litigate, a person must show, first and foremost, an invasion of a legally protected interest that is concrete and particularized and actual or imminent."  *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997).  A plaintiff can show standing by demonstrating that they "have been threatened with prosecution, [if] a prosecution is likely, or even [if] a prosecution is remotely possible."  *Culinary Workers Union, Local 226 v. Del Papa*, 200 F.3d 614, 618 (9th Cir. 1999).  In the First Amendment context in particular, a plaintiff has standing to sue if a challenged governmental action operates to "chill" the Plaintiffs' exercise of his or her First Amendment Rights.  *Id.* at 618-19 (citing *Doe v. Bolton*, 410 U.S. 179, 188 (1973)).

Here, Plaintiffs' harm is readily apparent.  Plaintiffs have been forbidden from displaying a Sign that contains a non-obscene image that Defendants do not like.  Plaintiffs' Sign is displayed, and is visible only to people who are approaching the brothel.  The Sign did not impede traffic.  Defendants caused Plaintiffs concrete harm when they threatened Plaintiffs and told them that his Sign had to be censored from public view or Defendants would schedule a show-cause hearing against them.  Plaintiffs face an extreme penalty if he engages in

his First Amendment protected activity: protecting a property interest.  This creates a true case and controversy sufficient to confer Article III standing.

### 4.2   Plaintiffs are Likely to Prevail on the Merits of His Free Speech Claims

Plaintiffs' constitutional rights were violated by Defendants' actions, specifically by instructing Plaintiffs to censor the Sign and threatening to issue a show-cause against Plaintiffs for his conduct protected under the First Amendment and Article 1, Section 9 of the Nevada Constitution.

#### 4.2.1  Plaintiffs' Activities are Protected by the First Amendment

##### 4.2.1.1   Strict Scrutiny Applies to Content-Based Restrictions

The First Amendment provides that "Congress shall make no law … abridging the freedom of speech." *See* U.S. Const., Amendment I.[5]  Government action that restricts speech based on its content is subject to strict scrutiny.  *See Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2221 (2015).  Where a law imposes content-based restrictions on speech, those provisions can stand only if they survive strict scrutiny, which requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest.  *Id.*  Speech is content based if the government restriction applies to particular speech because of the topic discussed or the idea or message expressed.  *Id.*  Here, Defendants' sudden restrictions on Plaintiffs' speech is based only on the content of the speech, as evidenced by the fact that Defendants instructed Plaintiffs to censor only the stick-figures, and did not instruct them to take down

---

[5]   The First Amendment protects both Plaintiff Hof's right to free speech and Plaintiff the Cherry Patch LLC's right to free speech as the Supreme Court has long, "recognized that the First Amendment applies to corporations." See *Citizens United v. FEC*, 558 U.S. 310, 312, 130 S. Ct. 876, 883 (2010), citing to *First Nat'l Bank v. Bellotti*, 435 U.S. 765, 777, 98 S. Ct. 1407, 1416 (1978) ("The inherent worth of the speech in terms of its capacity for informing the public does not depend upon the identity of its source, whether corporation, association, union, or individual.")

the whole Sign or cover the writing on the Sign. Here, Defendants decided that they did not like a portion of Plaintiffs' speech and instructed Plaintiffs to censor it. Defendants' actions here were content based.

Accordingly, Defendants are not justified by any compelling governmental interest, as there is no conceivable compelling interest in censoring two stick-figures on a Sign. Defendants' actions were not narrowly tailored because Defendants demanded complete censorship of the stick-figures. Last, Defendants have not chosen the least restrictive means of censoring the stick-figures since they have demanded that Plaintiffs censor the entire portion of the Sign that shows the stick figures. Defendants actions in censoring Plaintiffs' speech is content based and will not survive strict scrutiny.

### 4.2.1.2 Even If the Court applies the commercial speech test, Defendants actions violate the First Amendment

The mere fact that one of the Plaintiffs is a company and that the Sign is located near a brothel does not transform the nature of the speech. There are two main issues to analyze in detail here: First, the Sign is not commercial speech as defined by the U.S. Supreme Court as it does not directly advertise any products or services. However, even if this Court determined that Cherry Patch LLC's speech is commercial speech, Plaintiffs would still meet the *Central Hudson* test for commercial speech, as analyzed in more detail below. The second issue is that the Sign at issue is not an advertisement as defined by NV Rev Stat § 201.430 (2013), which provides penalties to brothel owners for unlawful advertising of prostitution.

First, Cherry Patch LLC's speech is not commercial in nature, as the humorous Sign at issue is meant merely to guide people, to ensure people do not drive the wrong way and disturb neighbors in the residential neighborhoods, and does not propose any commercial transaction. While the humorous Sign alerts

people that a brothel is nearby, it also serves as a warning to those who wish not to drive near a brothel.  There is no "demonstr[ative] economic motivation sufficient to transform" the humorous Sign into Cherry Patch LLC's "commercial speech."  *See Tobinick v. Novella*, 848 F.3d 935, 951 (11th Cir. 2017), citing to *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council*, Inc., 425 U.S. 748, 761-62, 96 S. Ct. 1817, 48 L. Ed. 2d 346 (1976) (speech that includes content on commercial topics is not automatically commercial speech).

However, assuming *arguendo* that this Court deems the Sign to be commercial speech, Defendants actions would still be unconstitutional restrictions on commercial speech as outlined in *Central Hudson*, where the Supreme Court found that commercial speech may be restricted if the speech concerns: 1) an illegal activity, 2) is misleading, or 3) the government's interest in restricting the speech is substantial and directly advances the government's interest, and 4)  the regulation is narrowly tailored to serve the government's interest. *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557, 562, 100 S. Ct. 2343, 2349 (1980).

Here, brothels are not illegal in Nye County and there is nothing misleading about the content of the speech, since the stick-figures on the Lovers at Play Sign are only meant to be humorous, and not to advertise a service or product. Further, no reasonable person would assume that they could request "stick-figure sex"[6] at a brothel, as the stick-figures are merely suggestive, so there is nothing misleading.  Third, there is no known regulation at play, but the government has no known interest in restricting Plaintiff's speech, never mind a substantial reason. Last, the government has not narrowly tailored its request that Plaintiffs censor the stick-figure cartoon, because Defendants have requested that the entire

---

[6]   If that is even a thing.  The undersigned is unaware of it being one.

RANDAZZA | LEGAL GROUP

cartoon be censored completely from view.  Thus, even if this Court determined that Plaintiff's speech is commercial in nature, Defendants' actions would be unconstitutional under the *Central Hudson* test.

The last point is that there is nothing unlawful[7] about Plaintiffs' speech. Pursuant to NV Rev Stat § 201.430 (2013), brothel owners are not allowed to advertise their brothels in places where prostitution is illegal.  Advertisements include the, "publication of the address, location or telephone number of a house of prostitution or of identification of a means of transportation to such a house, or of directions telling how to obtain any such information." *Id.*  The Signs, as shown in the exhibit, are humorous and do mention Plaintiffs' brothel or the address of the brothel, or any other brothel.  Further, the Sign is located in close proximity to a legal brothel in Nye County, where prostitution is legal.  Plaintiffs has not violated any unlawful advertising rule; the Sign here is pure speech and it has been censored based on the content.

### 4.2.1.3   Symbolic Speech is Protected by the First Amendment

Further, symbolic speech is no less protected than actual speech, and the fact that Plaintiffs' speech is a Sign, rather than actual speech, is irrelevant

---

[7]   While Defendants have not cited any law that Plaintiffs have violated, Plaintiffs respectfully point out that after many years of routine inspections, no Official has ever cited the Sign as an issue, and accordingly the government should be estopped from suddenly enforcing this unknown regulation now. Plaintiffs reserve the right to raise equitable estoppel as a defense should the government argue that the Sign violated an ordinance.  *See Watkins v. United States Army*, 875 F.2d 699, 706 (9th Cir. 1989), citing to *Heckler v. Community Health Services of Crawford County, Inc.*, 467 U.S. 51, 60-61, 81 L. Ed. 2d 42, 104 S. Ct. 2218 (1984);("The Supreme Court has expressly left open the issue whether estoppel may run against the government, refusing to hold "that there are no cases in which the public interest in ensuring that the Government can enforce the law free from estoppel might be outweighed by the countervailing interest of citizens in some minimum standard of decency, honor, and reliability in their dealings with their Government.")

because Plaintiffs' Sign is sufficiently imbued with elements of communication to implicate the First Amendment.  *See Texas v. Johnson*, 491 U.S. 397, 399 (1989).  The fact that the speech on the Sign is merely stick figures is also irrelevant, because government officials do not have the power to "prescribe what shall be orthodox" in deciding what expression is being expressed by the symbolic speech.  *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642, 87 L. Ed. 1628, 63 S. Ct. 1178 (1943) (internal quotation marks omitted)).  The stick-figures on the "Lovers at Play" Sign are wrapped around each other in a humorous fashion, and the meaning and purpose of the Sign is lost if the stick-figures are censored.  The fact that Plaintiffs' Sign is merely a depiction of stick-figures does not mean that his speech is deserving of less protection, because symbolic expression is also protected by the First Amendment.

### 4.2.1.4    Plaintiff's Sign is Not Obscene

Plaintiffs' Lovers at Play Sign, which depicts two stick-figures wrapped around each other, is not obscene. The Supreme Court has noted that States may censor obscene material, but defines obscene material as, "limited to works which, taken as a whole, appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way, and which, taken as a whole, do not have serious literary, artistic, political, or scientific value."  *Miller v. California*, 413 U.S. 15, 16, 93 S. Ct. 2607, 2610 (1973).  Here, the Lovers at Play Sign fails to meet any of those standards, because no reasonable person could find that a stick-figure cartoon[8] of two people wrapped around each other, that does not even

---

8    Obscenity Prosecutions for drawings are rare and are usually based on depictions of child pornography, as legislated by the 2003 Protect Act (18 U.S.C. § 1466A), which outlaws cartoons, drawings, sculptures or paintings **depicting minors** engaging in sexually explicit conduct, and which lack "serious literary, artistic, political, or scientific value." No reasonable person could infer that the stick figure cartoon is a depiction of minors.  Further, if such an argument is ever

depict nudity or genitals, could possibly appeal to the prurient interest.  Although the stick-figure cartoon is suggestive of sex, when paired with the words "Lovers at Play", there is nothing morbid or shameful about the cartoon.

Given that there are no details of any body parts on the cartoon stick-figures, there is nothing patently offensive about the cartoon, nor is the cartoon "vulgar", nor does the cartoon depict hardcore sex.  The stick-figure cartoon is less sexually detailed than some of the world's most celebrated paintings, including many of Henri Matisse's paintings and drawings on display at the Museum of Modern Art[9] in New York City.

Last, the stick-figure drawing on the Signs indeed have serious value, as the Supreme Court has found that "humor...can provide a social benefit" and is an important part of social commentary.  *See Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579, 114 S. Ct. 1164, 1171 (1994).  Plaintiffs' signs, including the Sign at issue in the instant case, are intended to be humorous and provide social commentary, and are intricately intertwined with Mr. Hof's brand.  No fact-finder would find that the drawing is worthless and contains no social value, thus, the drawings cannot be considered obscene.

### 4.2.1.5   Scandalous Speech is Protected by the First Amendment

Even if Defendants found the Sign to be offensive, the First Amendment would not permit them to censor the Sign based on its viewpoint.  In a similar case, the Second Circuit Court of Appeals recently ruled that government officials violated the First Amendment by denying a food-vendor's request to display signs that the government officials found "offensive" without reference

---

made by the government, the Plaintiffs reserve the right to challenge the constitutionality of this statute, among other defenses to violating it.

[9]   See Henri Matisse's works on display at the Museum of Modern Art, available at: <https://www.moma.org/artists/3832>

RANDAZZA | LEGAL GROUP

to "any statute, regulation, policy, or other source of guidance in making his decision."  See *Wandering Dago, Inc. v. Destito*, 879 F.3d 20 (2d Cir. 2018) (internal citations omitted).  The court in *Wandering Dago* applied the reasoning of *Matal v. Tam*, 137 S. Ct. 1744 (2017) to signs displayed in public.  The government cannot restrict a government benefit based on the offensiveness of speech because deeming something offensive is "the essence of viewpoint discrimination."  *Matal v. Tam*, 137 S. Ct. 1744, 1750 (2017).

Similarly, the United States Court of Appeals recently expanded this analysis to include immoral or scandalous speech.  See *In re Brunetti*, 877 F.3d 1330 (Fed. Cir. 2017) ("the immoral or scandalous provision...impermissibly discriminates based on content in violation of the First Amendment.")  Here, regardless of Defendants' opinion of Plaintiffs' speech, Defendants are barred by the First Amendment from ordering Plaintiffs to censor the Lovers at Play Sign from public view based on the content of the speech.  Like in *Wandering Dago*, above, Defendants have cited no statute or ordinance as to why Plaintiffs must censor his Sign.  The Forced censorship is based only on Defendant's dislike of the content of the Sign, and the First Amendment does not allow this result.

The ruling in *Wandering Dago* is especially instructive here, because Defendants may argue that they can regulate Plaintiffs' speech because it is visible from the street by the public.  However, even if the Sign is "visible from a public street or place" the Court must determine whether the government action is a permissible restraint on obscenity or if it applies to Signs protected by the First Amendment.  *See Erznoznik v. Jacksonville*, 422 U.S. 205, 206, 95 S. Ct. 2268, 2271 (1975).  Here, the content of the Sign consists of two stick figures wrapped around each other; the stick-figures have no genitals, and no actual nudity is on display.  However, even if the Sign did have nudity, the Defendant's forced censorship of the Sign:

...sweeps far beyond the permissible restraints on obscenity and thus applies to [signs] protected by the First Amendment, violates, as applied and upon its face, the First Amendment's guaranty of free speech by not satisfying the rigorous First Amendment standards applicable to government attempts to regulate expression, since (1) the limited privacy interest of persons on the public streets cannot justify this censorship of otherwise protected speech on the basis of its content; (2) if the ordinance is intended to regulate expression accessible to minors, it is overbroad in its proscription; (3) absent a justification for distinguishing [signs] containing nudity from all other [signs] in a regulation designed to protect traffic, the [restriction] cannot be salvaged as a traffic regulation...

See *id.*

There is no conceivable justification for Defendants' actions against Plaintiffs as the Sign is not obscene, does not contain actual nudity, and violates no conceivable ordinance. The fact that the Sign is near a road is of no importance, because people offended by the Sign could "turn away" and look ahead at the road, as contemplated by the U.S. Supreme Court in *Erznoznik* and opined upon in *Wandering Dago*. Censoring the Sign is also not a conceivable traffic restriction. The fact that the Sign is visible to the public does not mean it is deserving of less First Amendment protection. Thus, Defendant's First Amendment rights have been violated.

### 4.2.2 Defendants' Actions Are an Unconstitutional Prior Restraint

In the vast majority of circumstances, prior restraints on speech are not permitted under the Constitution. "Prior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights." *Neb. Press Ass'n v. Stuart*, 427 U.S. 530, 559 (1976). This principle that "the Supreme Court has roundly rejected prior restraint" thoroughly ingrained in the American psyche that they cut against our very cultural fabric. *See Kinney v. Barnes*, 443 S.W.3d 87, 91 n.7 (Tex. 2014) (quoting Sobchak, W. *The Big Lebowski* (PolyGram Filmed Entertainment & Working title Films 1998)). Prior restraints are not *per se*

unconstitutional, but they "bear a heavy presumption against [their] constitutional validity." *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963).

Without any legal process at all, Defendants imposed a restraint on Plaintiffs' ability to engage in his free speech activities.  This eliminates Plaintiffs' ability to engage in protected expression, and chills Plaintiffs' ability to express humorous messages by posting signs that Defendants may not like, based on its content.  "First, the mere existence of the licensor's unfettered discretion, coupled with the power of prior restraint, intimidates parties into censoring their own speech, even if the discretion and power are never actually abused." *Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 757, 108 S. Ct. 2138, 2144 (1988). Here, Defendants have abused their authority, and they dangle the threat of taking Plaintiffs' license away over his head by threatening to schedule a show-cause hearing if and when Plaintiffs engages in speech they do not like.  Here, the speech happens to be stick figures.  Tomorrow, it could be something Mr. Hof says at a campaign rally.

This prior restraint authorizes "a licensor to pass judgment" on Plaintiffs' speech.  *Seattle Affiliate of the October 22nd Coal. To Stop Police Brutality, Repression & the Criminalization of a Generation v. City of Seattle*, 550 F.3d 788, 797 (9th Cir. 2008) (quoting *Thomas v. Chi. Park Dist.*, 534 U.S. 316, 322 (2002)). There is no reason here to think that the restriction here is anything other than content-based. The restriction in play was thus explicitly directed at the content of Plaintiffs' free speech activity.

Defendants simply decided that they did not want Plaintiffs to engage in certain speech and took it upon themselves to instruct Plaintiffs what speech they approve and what speech they do not approve.  Even if Defendants' discretion was legislatively delegated to them, it would be improper.  However, for them to simply take it upon themselves to be the sole source of the designation of what

speech is acceptable and to then arbitrarily impose it is beyond the pale. Defendants arbitrarily chose speech they did not like, which rendered Plaintiffs' exercise of free speech meaningless, and did not leave open adequate or ample alternative channels for communication. For a government official to determine that certain speech must be censored delegates far too much discretion to a single official.

A public official cannot decide which speech it likes and which speech it does not like because there must be "procedural safeguards that ensure that the decision maker approving the speech does not have 'unfettered discretion' to grant or deny permission to speak." *Six Star Holdings, LLC v. City of Milwaukee*, 821 F.3d 795 (7th Cir. 2016). "At the root of this long line of precedent is the time-tested knowledge that in the area of free expression a licensing statute placing unbridled discretion in the hands of a government official or agency constitutes a prior restraint and may result in censorship." *Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 757 (1988). The fact that one person may, without any checks or balances, impose a prior restraint "intimidates parties into censoring their own speech, even if the discretion and power are never actually abused." *Id.*

The sudden disapproval of certain speech on a Sign that Defendants claim Plaintiffs must comply with or else he will face a show-cause hearing and possibly lose his brothel license. This is a prior restraint that restricts Plaintiffs' speech and conditions it on having been willing to comply with the taste of particular government officials. Mr. Hof has owned brothels in Nevada for over 20 years and he previously had no issues. In fact, the Sign Defendants have cited as being an issue has been on Plaintiffs' property for many years. These actions by the Defendants are utterly impermissible under the U.S. and Nevada constitutions, and Plaintiffs will prevail on his claims.

### 4.3    Defendants' Activities Violate Plaintiffs' Due Process Rights

The constitutional guarantee of due process requires that laws give individuals reasonable notice of prohibited conduct.  Procedural due process under the Fourteenth Amendment is meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property. *Carey v. Piphus*, 435 U.S. 247, 248 (1978).  The constitutional guarantee of due process requires that a purpose of procedural due process is to convey to the individual a feeling that the government has dealt with him fairly, as well as to minimize the risk of mistaken deprivations of protected interests. *Id.*  Here, Plaintiffs displayed the Sign for many years, and Defendants suddenly decided they did not like the content of the Sign and coerced them to censor it, or risk losing his license for his business.  Defendants did not offer any recourse to Plaintiffs, or any means of appealing the sudden decision, meaning there is no administrative process for appeal. Accordingly, Plaintiffs' due process rights guaranteed under the Constitution have been violated.

### 4.4    Without Injunctive Relief, Plaintiffs Will Continue to Suffer Irreparable Harm

As stated above, "[a] preliminary injunction should be issued upon a clear showing of either (1) probable success on the merits and possible irreparable injury or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Lydo Enters. v. Las Vegas*, 745 F.2d 1211, 1212 (9th Cir. 1984). Plaintiffs meet both of these sets of criteria.  As discussed above, he has a high probability of prevailing on the merits.  Moreover, the loss of First Amendment rights even for a short period of time constitutes irreparable harm. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Jacobsen v. United States Postal Serv.*, 812 F.2d 1151, 1154 (9th Cir. 1987).

The Ninth Circuit generally examines these two prongs together, recognizing that when a regulation restricts First Amendment, the equities tip in the Plaintiffs' favor and advance the public interest in upholding free speech principles. *See Thalheimer v. City of San Diego*, 645 F.3d 1109, 1128-29 (9th Cir. 2011); *Kline v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009) (finding that a plaintiff challenging a ban on placing leaflets on windshields established that the loss of his First Amendment rights tipped the equities in his favor and that the public interest also supported the issuance of the injunction).

As for the second set of criteria for a preliminary injunction, there are sufficiently serious questions going to the merits to make them fair grounds for litigation. As for the balance of hardships, Defendants cannot claim any hardship; Plaintiffs did nothing unlawful or disruptive by engaging in his free speech. To allow them to continue to engage in free speech, by displaying the Sign uncensored, would not result in any conceivable harm to anyone. Furthermore, as Defendant's censorship is unconstitutional, there is no harm in not permitting them to enforce it.

The lack of damage that would occur if injunctive relief were granted obviously cannot compare with the irreparable harm already suffered by Plaintiffs, and that which he will continue to suffer without injunctive relief. *McIntire v. Bethel Sch., Indep. Sch. Dist*. No. 3, 804 F. Supp. 1415, 1429 (W.D. Okla. 1992) is instructive:

> The Court also considers the potential damage to Defendants of undermining their authority that a proposed injunction would have. On the other hand, the First Amendment right of free speech is a fundamental right, the loss of which, as observed above, for even a minimal period of time, constitutes irreparable injury …. The Court finds that the threatened injury to Plaintiffs – impairment and penalization of the exercise of their First Amendment rights – outweighs whatever damage, if any, the proposed injunction may cause Defendants.

The situation in *McIntire* is the same as here.   Plaintiffs were given an unquestionably unconstitutional prior restraint that prevents them from engaging in speech that is protected by the First Amendment.  Every day that the ban on Plaintiffs' speech stays in effect, Defendants violate his constitutional rights.

Last, the public interest in this matter is best served by the protection of Plaintiffs' constitutional rights.  *See Elrod*, supra.  Our constitutional rights are our fundamental freedoms, reserved by the people; not rights merely granted to us. To deny Plaintiffs one of the most fundamental freedoms – freedom of expression – would not serve the public interest.

**5.0    CONCLUSION**

For the foregoing reasons respectfully requests that the Court enter a temporary restraining order enjoining Defendants from enforcing the unlawful threat and forced censorship against Plaintiffs or requiring Plaintiffs to censor his Sign on his property and to engage in activities protected under the First Amendment.

Dated: February 5, 2018            Respectfully Submitted,

RANDAZZA LEGAL GROUP, PLLC

/s/ Marc J. Randazza
Marc J. Randazza (NV Bar # 12265)
LaTeigra C. Cahill (NV Bar # 14352)

4035 S. El Capitan Way
Las Vegas, NV 89147

Attorneys for Plaintiffs
DENNIS HOF and CHERRY PATCH LLC